UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MOHAMED AMALLE,

    Plaintiff,

v.

HEATHER WEYKER, *in her individual capacity as a St. Paul Police Officer*; JOHN BANDEMER, *in his individual and official capacities as a St. Paul Police Sergeant*; JOHN DOES 3-4, *in their individual and official capacities as supervisory members of the St. Paul Police Department*; *and* THE CITY OF ST. PAUL,

    Defendants.

Case No. 16cv1898 (JNE/TNL)
ORDER

## I. INTRODUCTION

Plaintiff Mohamed Amalle alleges violations of his constitutional rights in an investigation that led to his indictment by a federal grand jury and his subsequent arrest, a trial, and his acquittal on all counts in which he was charged. He sues Defendants Heather Weyker, a police officer for the St. Paul Police Department in Minnesota; John Bandemer, a St. Paul Police Department sergeant who is alleged to have been Weyker's supervisor; John Does 3-4, who are allegedly supervisory St. Paul police officers; and the City of St. Paul ("St. Paul"). Weyker and Bandemer move to dismiss Amalle's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and on absolute and qualified immunity grounds. Dkt. No. 36. St. Paul moves on behalf of the City of St. Paul and John Does 3-4 for judgment on the pleadings pursuant to Rule 12(c). Dkt. No. 45.

The investigation at the core of Amalle's civil complaint targeted a suspected venture involving the sex-trafficking of minor girls across Minnesota, Tennessee, and Ohio. The

investigation resulted in the criminal indictment of thirty people, mostly Somali, in the Middle District of Tennessee in 2010-2011 ("Tennessee Case"). Amalle alleges that Weyker and Bandemer fabricated evidence about him and others throughout the investigation, resulting in a tainted indictment that was further corrupted by Weyker's continuing deception, and causing his arrest and detention without probable cause.

Nineteen of Amalle's co-defendants in the Tennessee Case bring separate suits similarly alleging constitutional violations, and a twenty-first person brings another related civil suit. The parties agreed to coordinated briefing on the Defendants' motions. The Court assumes familiarity with its fuller opinion in one of the related cases, *Osman v. Weyker, et al.*, No. 16cv908 ("Osman Opinion") (filed simultaneously herewith), and will not repeat that opinion's discussion verbatim here, given the overlap in allegations and arguments. Amalle, coordinating with the other plaintiffs represented by his counsel, opposed the motions. *See* GBBS Pls.' Opp. to St. Paul Mot., Dkt. No. 50; GBBS Pls.' Opp. to DOJ Mot. to Dismiss, Dkt. No. 53.

The Court held a hearing on Defendants' motions on May 3, 2017, and now grants in part and denies in part Weyker and Bandemer's motion and grants St. Paul's motion.[1]

## II. APPLICABLE STANDARDS

A motion to dismiss or a motion for judgment on the pleadings is appropriately granted "only when there is no dispute as to any material facts and the moving party is entitled to judgment as a [m]atter of law." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (citation omitted). To survive a Rule 12 motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

---

[1] The United States also filed a Motion to Substitute and Dismiss, which was mooted by stipulation as recognized by the April 12, 2017 Order Permitting the GBBS Plaintiffs to Amend Complaints. Dkt. No. 60. Pursuant to that order, Amalle filed an Amended Complaint [Dkt. No. 61] ("AC"), which is thus the operative complaint subject to these Rule 12 motions.

2

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Haney v. Portfolio Recovery Assocs., LLC*, 837 F.3d 918, 924 (8th Cir. 2016), *as amended* (Dec. 27, 2016). *See also* Osman Op. 3-4.

### III. ALLEGATIONS

Most of the allegations are similar to those alleged by Osman and summarized and analyzed in the Court's order in that case. *See, e.g.*, Osman Op. 4-8. The Court briefly recounts some allegations in Amalle's Amended Complaint and some facts gleaned from the Tennessee Case record.[2]

On May 4, 2011, Amalle was indicted in a Second Superseding Indictment ("SSI") in the Tennessee Case. AC ¶ 16. He had not been indicted in the original or first superseding indictment, but was added as the thirtieth defendant in the Second Superseding Indictment, which charged him in four counts. *See* AC ¶ 23; SSI, *United States v. Amalle*, No. 3:10cr260, Dkt. No. 591 (M.D. Tenn. May 4, 2011). Two counts alleged participation in a sex-trafficking conspiracy in violation of 18 U.S.C. § 1591(a) (Counts 1 and 2). The other two counts alleged recruitment or attempted recruitment of a minor under the age of 14 (Jane Doe Two) for sex trafficking (Counts 12 and 13).

Amalle was arrested pursuant to the Second Superseding Indictment on May 10, 2011. AC ¶ 18. After a detention hearing on May 12, 2011, a magistrate judge ordered Amalle's detention in custody. AC ¶ 19.

The counts as against Amalle only referenced one supposed witness-victim, Jane Doe Two. AC ¶ 24. Indeed, the indictment "hardly mentioned [Amalle] at all." AC ¶ 25. He was alleged to have been an "associate" of two Somali gangs based in Minnesota. SSI ¶ 1(f). In

---

[2] The Court may take judicial notice of public documents in the Tennessee Case record. *Greenman*, 787 F.3d at 887.

3

addition, he was charged with being "[p]resent" when, on November 26, 2006, Jane Doe Two "was enticed into engaging in a sex act with a person known as 'BG,' whose identity is unknown." SSI ¶ 12. Jane Doe Two was alleged to have been under thirteen years old at that time. SSI ¶ 11. Lastly, Amalle and two others were charged with transporting Jane Doe Two "on multiple occasions" between January 2007 through May 5, 2007, often in a green minivan, to an apartment complex in Minneapolis, Minnesota. FSI ¶ 15. The indictment alleged that while driving to the apartments, "one or more of the aforementioned males would make cellular phone calls asking persons if they wanted to engage in sex with Jane Doe Two," and that they charged people money to have sex with her. *Id.*

"All of these charges were predicated on two facts that Weyker and Bandemer knew they could not prove: that Jane Doe Two was a minor and that Amalle was part of an imaginary sex-trafficking ring." AC ¶ 25. Amalle also "never conspired, engaged, or attempted to engage to have Jane Doe Two perform commercial sex. Fabricated evidence formed the basis for these false allegations against Amalle." AC ¶ 28. Weyker, by forming "a deep and manipulative relationship with Jane Doe Two and the other Jane Doe witnesses—whom she referred to as 'my girls' in a news interview about the Vice Unit's biggest indictment," manipulated and coerced Jane Doe Two and other witnesses into giving false testimony. *See* AC ¶¶ 29, 33, 35. In a Sixth Circuit opinion, the court made several remarks about interactions between Jane Doe Two, including that "meetings [between Weyker and Jane Doe Two at her school] . . . produced a story in which Jane Doe 2 was not a troubled runaway or juvenile delinquent, but was instead an innocent child taken in by a Somali gang who used her for sex" and that "Jane Doe 2 herself furthered the district court's suspicion when she testified on cross examination that Weyker had

misstated facts in the reports, adding to and omitting things from her statements." AC ¶ 36 (quoting *United States v. Fahra*, 643 Fed. Appx. 480, 482 (6th Cir. Mar. 2, 2016)).

In March 2012, a criminal trial began in which Amalle was tried on the only four charges against him. *See* AC ¶ 40. At the trial, Weyker "was not even called as a witness" because her "credibility was so eviscerated" by that point. AC ¶ 41.

The jury acquitted Amalle of all charges. AC ¶ 42; *United States v. Adan*, 913 F. Supp. 2d. 555, 560 (M.D. Tenn. 2012). "The majority of his co-defendants were also acquitted of all charges, but a few were found guilty on some counts." AC ¶ 42; *see also Adan*, 913 F. Supp. 2d at 560. "The trial judge, however, granted a judgment of acquittal for those defendants," pursuant to Federal Rule of Criminal Procedure 29, on the basis of a variance between the sex-trafficking conspiracy charged in Counts 1 and 2 and the multiple conspiracies proved at trial. *See* AC ¶ 42; *see Adan*, 913 F. Supp. 2d at 579. In March 2016, the Sixth Circuit affirmed the district court's grant of the three convicted co-defendants' Rule 29 motions. *See Fahra*, 643 Fed. Appx. at 493-94; AC ¶ 44.

A judgment of acquittal was entered, and Amalle was ordered discharged. *United States v. Amalle*, No. 3:10cr260, Dkt. No. 2557 (M.D. Tenn. June 8, 2012).

Amalle "would never have been indicted on sex trafficking charges," nor detained in custody, "had Weyker and Bandemer not fabricated evidence, cultivated and manipulated Jane Doe Two, manufactured testimony and misled federal authorities." AC ¶¶ 46-47.

Like Osman, Amalle alleges that the charges of a wide-ranging sex-trafficking conspiracy were baseless and that Weyker fabricated "[v]irtually all of the material evidence supporting [his] indictment," AC ¶ 31; that Weyker manipulated and coerced Jane Doe witnesses, including Jane Doe Two, into lying, *e.g.*, AC ¶¶ 29, 33, 46; and that indications of Weyker's fabrication

5

included her rough notes, AC ¶ 36, questions surrounding Jane Doe Two's age, AC ¶¶ 36, 38-39, questions surrounding Jane Doe Two's April 2009 trip to Nashville (which did not involve Amalle), AC ¶¶ 15, 30, 36, and the results of the Spring 2012 trial, AC ¶ 42. Also like Osman, Amalle's complaint repeatedly cites to remarks about Weyker and the case by the district and appellate courts in the Tennessee Case. *E.g.*, AC ¶¶ 30, 32 n.1, 36, 38, 44, 48-49.

IV. SUMMARY OF ARGUMENTS

A summary of the parties' arguments is included in Section IV of the Court's opinion in *Yusuf v. Weyker, et al.*, No. 16cv1012, filed simultaneously herewith. Amalle is represented by the same counsel as Yusuf.

V. LEGAL ANALYSIS

As explained fully in the Osman Opinion, pursuant to *Manuel v. City of Joliet*, 137 S. Ct. 911 (Mar. 21, 2017), Amalle's claims sound, if at all, in the Fourth Amendment, not the Fifth or Fourteenth. *See* Osman Op. 11-13; *see also id.* at 17-22. His complaint is that "[b]ut for the false testimony and other erroneous evidence manufactured by Weyker and Bandemer, no probable cause existed to detain or otherwise restrict Amalle's liberty." AC ¶ 1; *see also* AC ¶¶ 46-47. In other words, he complains "that a form of legal process resulted in pretrial detention unsupported by probable cause." *Manuel*, 137 S. Ct. at 919. So "the right allegedly infringed lies in the Fourth Amendment." *Id.* A "constitutional division of labor" applies to claims similar to Amalle's. *Id.* at 920 n.8 (referring to *Gerstein v. Pugh*, 420 U.S. 103 (1975), and *Albright v. Oliver*, 510 U.S. 266 (1994)). Thus, because he challenges his pretrial detention, his claim is under the Fourth Amendment. In contrast, if he had been convicted and were to challenge the sufficiency of the evidence supporting that conviction, his claim would then be analyzed under the Due Process Clause of the Fourteenth Amendment because "once a trial has

6

occurred, the Fourth Amendment drops out: A person challenging the sufficiency of the evidence to support *both a conviction and any ensuing incarceration* does so under the Due Process Clause . . . ." *Id.* (emphasis added) (citing *Jackson v. Virginia*, 443 U.S. 307, 318 (1979), and *Thompson v. Louisville*, 362 U.S. 199, 204 (1960)). Although Amalle did stand trial, he was acquitted. *See Adan*, 913 F. Supp. 2d at 560. He thus challenges pretrial detention, not incarceration imposed pursuant to a sentence, and his claims sound in the Fourth Amendment. *Compare with Jackson*, 443 U.S. at 316 (describing the due process guarantee "that no person shall be made to *suffer the onus of a criminal conviction* except upon sufficient proof") (emphasis added), *and Thompson*, 362 U.S. at 206 (holding that it violates due process "to convict and punish a man without evidence of his guilt"). Amalle's claims for substantive due process violations under the Fifth or Fourteenth Amendments therefore fail. *See Manuel*, 137 S. Ct. at 919-20; *Albright*, 510 U.S. at 271 (plurality opinion).[3]

Under the Fourth Amendment analysis, the Court must decide whether Amalle plausibly alleges that the Defendants violated his right to be free from unreasonable seizure by arresting and detaining him without arguable probable cause, based on fabricated evidence.[4]

To evaluate whether a person's Fourth Amendment right has been violated by an arrest pursuant to a warrant that lacked probable cause, the court applies the analysis set out in *Franks v. Delaware*, 438 U.S. 154 (1978). *See Hawkins v. Gage Cty.*, 759 F.3d 951, 958-59 (8th Cir.

---

[3] As explained in a footnote in the Court's simultaneously filed order in *Yusuf v. Weyker, et al.*, No. 16cv1012, the attempt to distinguish *Albright* in his opposition papers, which were filed without the benefit of the *Manuel* decision, is not persuasive in light of the *Manuel* Court's clear interpretation of *Albright*. *See Manuel*, 137 S. Ct. at 918.

[4] Because the Court finds that only the Fourth Amendment, and not substantive due process, is applicable; because a Fourth Amendment claim in this case does not present a new context for a *Bivens* action; and because § 1983 and *Bivens* claims are analyzed similarly, the Court does not reach the question of whether Amalle's claim should be brought under § 1983 or *Bivens*. *See* Osman Op. 13-17.

2014); *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101, 105 (1st Cir. 2013). Thus, the court considers whether there were deliberately or recklessly false statements made in support of a finding of probable cause and whether those statements were necessary to the finding of probable cause. *See Franks*, 438 U.S. at 156; *Williams v. City of Alexander*, 772 F.3d 1307, 1311 (8th Cir. 2014). The court also considers whether material information was omitted with the intent to mislead or with reckless disregard as to whether the omission was misleading. *See Williams*, 772 F.3d at 1312; *Hawkins*, 759 F.3d at 959. If, setting aside the false statements (or adding in the omitted information), there was no probable cause to arrest, then the arrest violated the Fourth Amendment. *See Williams*, 772 F.3d at 1312-13; *Hawkins*, 759 F.3d at 958-59; *Hernandez-Cuevas*, 723 F.3d at 105. Probable cause "exists when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Greenman v. Jessen*, 787 F.3d 882, 888 (8th Cir. 2015) (citation omitted).

Where a plaintiff alleges that she was arrested without probable cause and the defendant asserts the qualified immunity defense, courts ask whether there was "*arguable* probable cause to arrest." *Stewart v. Wagner*, 836 F.3d 978, 984 (8th Cir. 2016) (citing *New v. Denver*, 787 F.3d 895, 899 (8th Cir. 2015)) (applying this standard to a Fourth Amendment claim for detention based on allegedly false and incomplete information in a probable cause statement). "[T]he issue for immunity purposes is not probable cause in fact but arguable probable cause, that is, whether the officer should have known that the arrest violated plaintiff's clearly established right." *New*, 787 F.3d at 899. "It is clearly established that the Fourth Amendment requires a *truthful factual showing* sufficient to constitute probable cause before an arrest warrant can issue." *Peterson v.*

*City of Plymouth*, 60 F.3d 469, 477 (8th Cir. 1995) (emphasis added) (quoting *Moody v. St. Charles Cty.*, 23 F.3d 1410, 1412 (8th Cir. 1994)).

### a. Analysis of Amalle's Claim Under the Fourth Amendment

In considering whether Amalle plausibly alleges a Fourth Amendment violation, the Court disregards mere conclusory statements, focuses on well-pleaded factual allegations and accepts them as true, and applies its judicial experience and common sense. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The Court also properly considers the Tennessee Case court record in assessing the pleadings. *See, e.g.*, *Greenman*, 787 F.3d at 887.

Amalle's core allegations are very similar to Osman's, including the ample citations to comments by the Tennessee Case district court and a related appellate decision. In the Osman Opinion, the Court examines several orders and memoranda by the district court and two separate Sixth Circuit Court of Appeals opinions concerning the Tennessee Case, some of which both Osman and Amalle cite. *See* Osman Op. 25-33. For instance, similar to Osman's allegations about the Spring 2012 trial, Amalle alleges that the jury acquitted him and five other defendants completely and that the district court granted the other three defendants' motions for judgment of acquittal[5] after their trial. *See* AC ¶ 42. Also like Osman, he cites repeatedly to the district court's post-trial order on the Rule 29 motions (*Adan*, 913 F. Supp. 2d 555 (M.D. Tenn. 2012)) and to the appellate opinion affirming that order (*Fahra*, 643 Fed. Appx. 480 (6th Cir. 2016)). *See* AC ¶¶ 30, 32 n.1, 36, 38-39, 44, 49. For instance, he quotes the *Fahra* opinion's noteworthy description of the "story" the prosecution presented at trial as "likely a fictitious story." AC ¶¶ 36, 44 (quoting *Fahra*, 643 Fed. Appx. at 484). Amalle also quotes some pointed

---

[5] Amalle's careful phrasing—alleging that the district court "granted a judgment of acquittal" as to the three defendants whom the jury convicted, rather than alleging that the district court "acquitted them"—may reflect some of the same considerations that the Court discusses in an aside on the phrase "acquitted" in the Osman Opinion. *See* Osman Op. 23-25.

9

remarks in that opinion about testimony and evidence surrounding a trip Jane Doe Two took to Nashville in April 2009 (even though the indictment did not allege that Amalle was involved with that trip), in order to support his allegations that Weyker manipulated Jane Doe Two into fabricating evidence in support of the large-scale sex-trafficking conspiracy. AC ¶¶ 30, 36 (quoting *Fahra*, 643 Fed. Appx. at 482-83). The Osman Opinion discusses in detail the district court's *Adan* opinion and the Sixth Circuit *Fahra* opinion, as well as other cited documents, including a pretrial memorandum at Dkt. No. 1392 concerning photographic show-ups conducted by Weyker and references to a July 31, 2012 detention hearing.

In Osman's case, the Court found that some of these statements by judicial officers are remarkable, and that taken all together along with other well-pleaded facts, they nudge Osman's Fourth Amendment claim as to Weyker over the *Iqbal* plausibility line. Amalle was exclusively charged with sex-trafficking-related crimes. Therefore, consistent with the analysis in the Osman Opinion, *see* Osman Op. 17-20, 22-28, 35, the Court finds that Amalle's allegations of a Fourth Amendment violation by Weyker in fabricating evidence related to sex trafficking also survive Weyker's motion to dismiss. The same caveats that the Court noted in the Osman Opinion apply as well to Amalle's allegations. Like Osman, Amalle has also included some factual allegations more specifically relating to his case, in addition to his detailed references to particular remarks by the district and appellate court. Amalle specifically denies that he ever was involved in any efforts to have Jane Doe Two perform commercial sex. AC ¶ 28. And he was acquitted by the jury on all such charges. Considering all of Amalle's allegations as to Weyker, the Court finds they meet the *Iqbal* standard.

The same cannot be said for Amalle's allegations about Bandemer. His allegations as to Bandemer are conclusory and lacking well-pleaded facts. And none of the judicial statements

that lend some plausibility to the allegations about Weyker refer to Bandemer in any way. Amalle does not plausibly plead that Bandemer directly violated his civil rights. Bandemer is entitled to qualified immunity on Counts 1 and 5.

### b. Supervisory Liability

Amalle also sues Bandemer and John Does 3-4 in their individual capacities as supervisors. He alleges that they were deliberately indifferent to or authorized Weyker's alleged violations of his constitutional rights. *E.g.*, AC ¶ 51. He does not allege that John Does 3-4 have supervisory responsibility over Bandemer. *See* AC ¶ 8.

A supervisor sued in his or her individual capacity in a § 1983 or *Bivens* suit "is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677; *see also S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). "When a supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending actor, the supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." *Krigbaum*, 808 F.3d at 340 (citing *Livers*, 700 F.3d at 355). "This rigorous standard requires proof that the supervisor had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right. Allegations of generalized notice are insufficient." *Id.* The notice prong requires that "[t]o impose supervisory liability, other misconduct [allegedly giving the supervisor notice] must be very similar to the conduct giving rise to liability." *Id.* (quoting *Livers*, 700 F.3d at 356).

Amalle's complaint, which is again very similar to Osman's complaint as to the supervisory liability allegations, likewise contains few allegations—and fewer well-pleaded facts—regarding supervisory liability. Like Osman, he alleges that Bandemer and the John Does

11

had supervisory responsibility over Weyker, *see, e.g.*, AC ¶¶ 8, 72; that the investigation was very important to the St. Paul Police Department vice unit, AC ¶ 29; and that "[b]y at least February 15, 2012, these [supervisory] defendants had actual knowledge" of Weyker's fabrications based on a February 2012 memorandum-order at Dkt. No. 1392 and other district court orders, *id.* ¶¶ 48-49, 52. Like Osman, Amalle cites *United States v. Mohamud*, No. 3:10cr260, 2013 WL 1935506, at *11 n. 6 (M.D. Tenn. May 9, 2013), and *United States v. Adan*, 913 F. Supp. 2d 555, 589 n.10 (M.D. Tenn. Dec. 19, 2012), in support of his supervisory liability notice allegations. AC ¶¶ 48-49.

As explained in the Osman Opinion, these allegations do not sufficiently plead supervisory liability based on notice. *See* Osman Op. 37-41. Nor do they establish a pattern of unconstitutional acts by Weyker. Ignoring conclusory or unsupported allegations, Amalle does not allege any other similar acts by Weyker before the Tennessee Case investigation that could show a pattern about which Bandemer or the John Does personally knew.

The allegations fail to state a claim for supervisory liability, and Bandemer and John Does 3-4 are entitled to qualified immunity as to these counts.

### c. Municipal Liability

Amalle sues St. Paul as well as Bandemer and the John Does in their official capacities for municipal liability under *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658 (1978). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. "Instead," a municipality is liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Id.*

A plaintiff therefore must show that there is an "official" policy or a "custom or usage

with the force of law." *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016). A plaintiff must plead "allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citation omitted). Absent allegations of an official policy that was the moving force behind the violation, "[m]isconduct among a municipality's employees must be 'continuing, widespread, [and] persistent' to establish such a custom." *Kelly*, 813 F.3d at 1075 (citation omitted). Also, "the municipality will not be liable unless policymaking officials exhibit '[d]eliberate indifference to or tacit authorization of such conduct . . . after notice to the officials of that misconduct." *Id.* at 1075-76 (citation omitted). The question is whether a "governmental policy or custom was the 'moving force' that led to the deprivation of [the plaintiff's] constitutional rights." *Speer v. City of Wynne*, 276 F.3d 980, 986 (8th Cir. 2002). Even if no individual employee is found liable, a municipality might be liable, but only where "the combined actions of multiple officials or employees may give rise to a constitutional violation." *Id.*

Amalle does not adequately support his conclusory municipal liability allegations with well-pleaded facts. He does not allege with well-pleaded facts that Weyker or other St. Paul Police Department employees fabricated evidence in other investigations, nor that policymaking officials in the department were aware of any previous incidents of fabrication of evidence. He does not allege well-pleaded facts to support a theory that multiple St. Paul Police Department members—not even Weyker and Bandemer—combined to violate his rights. Nor does he allege facts that would demonstrate an official department *policy* that moved officers to fabricate evidence or coerce witnesses and mislead prosecutors and grand juries to secure indictments. He also does not plausibly allege any such *custom* because, among other reasons, he has not

13

adequately alleged notice, as explained above. The supervisory defendants sued in their official capacities, and the City of St. Paul, are entitled to qualified immunity on these claims.

## VI. Conclusion

Defendants are entitled to qualified immunity on all counts except Counts 1 and 5 as to Weyker. As to Defendants Bandemer, John Does 3-4, and the City of St. Paul, the Court grants their motions and dismisses with prejudice. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1060-61 (8th Cir. 2013); *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 635 (8th Cir. 2010).

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants Heather Weyker and John Bandemer's Motion to Dismiss [Dkt. No. 36] is GRANTED IN PART and DENIED IN PART consistent with the above opinion.

2. Defendant City of Saint Paul's Motion for Judgment on the Pleadings [Dkt. No. 45] is GRANTED.

3. Plaintiff Mohamed Amalle's Amended Complaint is DISMISSED WITH PREJUDICE as to Defendants John Bandemer, John Does 3-4, and the City of St. Paul.

4. Counts 1 and 5 of Plaintiff Mohamed Amalle's Amended Complaint are DISMISSED WITH PREJUDICE to the extent they plead violations of the Fifth and Fourteenth Amendments.

Dated: August 9, 2017

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge